O

# United States District Court
# Central District of California

| | |
|---|---|
| COMPHY CO., INC., a California corporation,<br><br>               Plaintiff,<br><br>    v.<br><br>COMFY SHEET; PRATIK JAIN, an individual doing business as Comfy Sheet,<br><br>               Defendants. | Case № 2:20-cv-03029-ODW (Ex)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [55] [58]** |

## I.     INTRODUCTION

Plaintiff Comphy Co., Inc. moves for default judgment against Defendant Pratik Jain, an individual doing business as Comfy Sheet, following Defendant's failure to appear or respond to Plaintiff's Complaint for trademark infringement, unfair competition, false designation of origin, and cyberpiracy. (Mot. Default J., ECF No. 55; Request for Ruling, ECF No. 58.) For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

Comphy initiated this action against Defendant Comfy[2] for trademark infringement, unfair competition, false designation of origin, and cyberpiracy. (*See* Second Am. Compl. ("SAC"), ECF No. 38.) Since 2003, Comphy has distributed and sold its branded line of high-end bedding products to spas, hotels, and to consumers for home use. (SAC ¶¶ 8, 10.) Comphy markets, promotes, and sells its products under the Comphy trademark, which consists of a stylized "C" over the word "COMPHY". (SAC ¶ 8.) Comphy has used variations of its brand name including COMPHY COMPANY, COMPHY SHEETS, Comphy Bed and Bath, Comphy Baby, Comphy Accents, and Comphy Design a Bed. (*Id.*) Comphy sells its products at spas and hotels, and online exclusively at its own website, www.comphy.com. (SAC ¶ 11.)

Comphy owns two active registered trademarks for its brand. The first is for its stylized "C" mark in classes 24 and 25.[3] (SAC ¶ 15; *Id.*, Ex. 3 ("144 Registration").) The second is for its stylized COMPHY mark in the same classes. (SAC ¶ 16; *Id.*, Ex. 4 ("190 Registration").) Comphy also has a pending application at the U.S. Patent and Trademark Office ("USPTO") for the COMPHY word mark in classes 24 and 25. (SAC ¶ 17, Ex. 5.)

Comphy alleges that Defendant[4] deliberately and intentionally misappropriated the Comphy marks to trade upon the goodwill that Comphy developed in the

---

[2] The caption page of the Second Amended Complaint ("SAC") indicates somewhat circuitously that the Defendants in this action are (1) "Comfy Sheet" and (2) "Pratik Jain, doing business as Comfy Sheet." Comphy alleges that "defendant Comfy Sheet is a fictitious name of Pratik Jain that has a principal place of business at 31, Alagiri Street, Erode, India 638001." (SAC ¶ 3.) No other allegations or evidence suggest that Comfy Sheet is its own independent corporate entity. Comphy's allegation is sufficient to demonstrate that there is but one Defendant in this matter: Jain, doing business as Comfy Sheet.

[3] Class 24 goods are linens and bedding, namely towels, bed pads, mattress pads, table pads, sheets, duvets, comforters, pillow cases, pillow shams, and table skirts. (SAC ¶ 15.) Class 25 goods are robes. (*Id.*)

[4] Hereinafter, to facilitate easier reading of this Order, the term "Defendant" is used to refer to Jain, doing business as Comfy Sheet.

marketplace by confusing consumers into thinking that Defendant's products were synonymous with Comphy products. (SAC ¶ 33.) In 2018, Jain attempted to register a stylized "C Comfysheets" mark, but the USPTO denied the application because of its similarity to Comphy's 190 Registration. (SAC ¶ 23, Ex. 6.) Later, while the present litigation was pending, Jain filed a second application with the USPTO to register a revised "Comfy Sheet" mark. (SAC ¶ 23, Ex. 8; Decl. Robert Ezra ("Ezra Decl.") ¶ 16, ECF No. 55-2.) Comphy has appeared in the USPTO proceedings to oppose Jain's application and is expecting a determination in mid-2023. (Resp. Order to Show Cause ("OSC Resp."), ECF No. 60; *id.*, Ex. 2.)

Defendant sells sheets under the brand name "Comfy Sheets" on its website, www.comfysheet.com, and through a Comfy Sheets Store on Amazon. (SAC Exs. 7, 8.) Like Comphy, Defendant uses a stylized "C" to mark its goods, though whereas Comphy's stylized "C" is wide, curvy, and has the appearance of being handwritten, Defendant's C is more square, digital, and geometric. (Compl. Exs. 1, 5, 6.) Comphy contends that Defendant arranged so that Amazon searches for "Comphy," "Comphy Co," and "Comphy Sheet" returned results for Comfy Sheet, thereby directing Comphy's customers to Defendant's business pages. (SAC ¶ 24; *see* Ezra Decl. ¶ 17.) These business pages contained false contact information for Defendant, including a non-functioning email address, a non-existent business address in Austin, Texas, and a phone number that directed callers to a third-party bedding competitor. (SAC ¶¶ 25–26; *see* Decl. Matt A. Young ¶¶ 3–8, ECF No. 55-3.) That these actions created confusion in the marketplace is demonstrated by the more than 100 customers who conflated the two businesses and reached out to Comphy customer service with complaints about the quality of Comfy sheets they had purchased. (SAC ¶ 31; Decl. Mia Richardson ("Richardson Decl.") ¶ 20, ECF No. 55-2.)

### III. PROCEDURAL BACKGROUND

In the operative SAC, Comphy asserts claims against Defendant for (1) federal trademark infringement; (2) false designation of origin under federal law; (3) common

law trademark infringement; (4) California common law unfair competition; (5) California statutory unfair competition, and (6) cyberpiracy. Comphy seeks compensatory damages, statutory damages, attorneys' fees, and injunctive relief to stop the infringement. (SAC, Prayer for Relief.) Defendant has neither answered Comphy's Complaint nor appeared in any capacity in these proceedings. Accordingly, Comphy now moves for default judgment against Pratik Jain pursuant to Federal Rule of Civil Procedure ("FRCP") 54 and 55.

On September 7, 2021, after having taken Comphy's Motion under submission, the Court issued a Order to Show Cause directing Comphy to explain why this case should not be stayed pending the outcome of the current USPTO proceedings. (Order to Show Cause, ECF No. 59.) Although Comphy admits that a default judgment in this matter would have an effect on the USPTO proceedings, Comphy convincingly argues that, given that the patent proceedings will not conclude until early 2023 at the earliest, FRCP 1's promise of a "just, speedy, and inexpensive determination" of every action in federal court requires the Court to move forward. (OSC Resp. 4.) Thus, the Court proceeds.

### IV.   LEGAL STANDARD

FRCP 55(b) authorizes a district court to grant default judgment against a defendant who fails to respond to a complaint following an entry of default by the clerk under FRCP 55(a). Fed. R. Civ. P. 55(b)(2). Before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing (a) when and against which party default was entered; (b) identification of the pleading to which default was entered; (c) whether the defaulting party is a minor or incompetent person; (d) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (e) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1.

Once the procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). The Ninth Circuit set forth seven factors for consideration by the courts when reviewing a motion for default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Upon entry of default, the well-pleaded factual allegations of a complaint are accepted as true; however, plaintiffs must prove allegations pertaining to the amount of damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## V. DISCUSSION

The Court first briefly evaluates personal jurisdiction over Jain before proceeding to consider Comphy's Motion.

### A. Personal Jurisdiction

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit. Fed. R. Civ. P. 4(k)(1)( A). California's long-arm jurisdictional statute is coextensive with federal due-process requirements, namely, that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945). In tort cases, jurisdiction may exist based upon: "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered-and which the defendant knows is likely to be

suffered-in the forum state." *Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993); *see also Calder v. Jones*, 465 U.S. 783 (1984). Here, application of this so-called "effects test" is appropriate because "[h]istorically, the law of unfair competition and of trademark infringement evolved in the general field of torts." *People ex rel. Mosk v. Nat'l Research Co. of Cal.*, 201 Cal. App. 2d 765, 770 (1962).

Comphy alleges that Defendant engaged in an intentional sales strategy designed to divert Comphy customers away from Comphy and toward its own business by including in its sponsored search engine optimization efforts terms specifically related to Comphy. (SAC ¶ 24.) This indicates intentional harmful conduct aimed at Comphy, a California corporation, which gives the Court personal jurisdiction over Defendant.

### B. Procedural Requirements

Comphy satisfies the procedural requirements under FRCP 54(c) and 55 as well as Local Rules 55-1 and 55-2. Comphy asserted in its motion that (1) the Clerk entered default against Defendant on May 13, 2021; (2) entry of default was based on Comphy's SAC, filed on March 12, 2021; (3) Defendant is neither an infant nor incompetent; (4) Defendant is not covered under the Servicemembers Civil Relief Act, 50 U.S.C. § 3931; and (5) although not required under FRCP 55(b)(2) because Defendant has not appeared in any capacity, Comphy attests that it served Defendant with a copy of the motion. (*See* Ezra Decl. ¶ 7.) Thus, Comphy satisfies the procedural requirements of Local Rules 55-1 and 55-2.

### C. *Eitel* Factors

Once the procedural requirements are met, district courts consider a number of factors in exercising discretion for granting default judgment. *Eitel*, 782 F.2d at 1471–72. For the reasons discussed below, the Court finds that the *Eitel* factors weigh in favor of granting default judgment.

#### 1. Possibility of Prejudice to the Plaintiff

First, *Eitel* directs courts to consider whether the plaintiff will suffer prejudice if the court does not enter default judgment. *Id*. at 1471. Denial of default leads to prejudice when it leaves a plaintiff without a remedy or recourse to recover damages or other compensation. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (citing *PepsiCo*, 238 F. Supp. 2d at 1177). Here, Defendant has failed to appear or participate in this action despite proper notice. (*See generally* Ezra Decl.) Therefore Comphy has no recourse other than default judgment to stop Defendant's infringement and to recover for the harm Defendant caused. The concern for prejudice is especially salient here because evidence of threatened loss of prospective customers or goodwill (such as that presented by Comphy) supports a finding that the harm caused by the trademark infringement is irreparable. *Stuhlbarg Intern. Sales Co. Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001). Accordingly, this factor weighs in favor of default judgment.

### 2. *Substantive Merits and Sufficiency of the SAC*

Pursuant to the second and third *Eitel* factors, courts evaluate the substantive merits of the movant's claims and the sufficiency of its pleadings, which "require that a plaintiff state a claim on which the plaintiff may recover." *PepsiCo*, 238 F. Supp. 2d at 1177 (cleaned up)[5]. For the purpose of default judgment, all well-pleaded allegations in the complaint, except those relating to damages, are admitted by the defendant's failure to respond and are assumed to be true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "Necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

---

[5] This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g., Mo. State Conference of the Nat'l Assn. for the Advancement of Colored People v. Ferguson-Florissant Sch. Dist.*, 894 F.3d 924, 930 (8th Cir. 2018); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017); *Guevara v. Chaffey Joint Union High Sch. Dist.*, No. ED CV 20-1929 FMO (SPx), 2021 WL 4439230, at *4 (C.D. Cal. Aug. 10, 2021).

### a. Trademark Infringement

To succeed on a trademark infringement claim, a plaintiff "must prove that: (1) it has a protectable ownership interest in the mark; and (2) the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). Comphy alleges five causes of action related to trademark infringement, unfair competition, and false designation of origin under various state, federal and common law. (*See generally* SAC.) "As a general matter, trademark claims under California law are 'substantially congruent' with federal [trademark] claims and thus lend themselves to the same analysis." *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004). Likewise, when a plaintiff asserts a a false designation of origin claim under 15 U.S.C § 1125(a) alongside a trademark infringement claim under 15 U.S.C § 1114, "the analysis under the two provisions is oftentimes identical." (*Entrepreneur Media, Inc. v. D. Nicole Enters., LLC*, No. SA-CV-13885-JLS-JPRx, 2014 WL 12589325, at *4 (C.D. Cal. Feb. 20, 2014). The Court will therefore analyze Comphy's federal trademark infringement, state trademark infringement, and false designation of origin claims together, grounding its analysis in the Lanham Act.

### i. Protectable Ownership Interest

Comphy holds two valid trademarks for its brand, the 144 Registration for its stylized "C" mark, and the 190 Registration for its COMPHY mark—each with a November 3, 2003 recited date of first use. (SAC ¶¶ 15–16, Exs. 3, 4.). Trademark registration constitutes "prima facie evidence of the validity of the registered mark." 15 U.S.C. § 1115. Therefore, Comphy has established that it holds a protectable ownership interest in the stylized "C" mark and the COMPHY mark.

### ii. Confusion

The test for whether a trademark has been infringed is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d

628, 632 (9th Cir. 2008). The Ninth Circuit "developed eight factors, the so-called *Sleekcraft* factors, to guide the determination of a likelihood of confusion." *GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). Courts are to apply the *Sleekcraft* factors flexibly; the "factors are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation*, 638 F.3d at 1145 (collecting cases). "In the context of the Web in particular, the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel." *GoTo.Com,* 202 F.3d at 1205.

First, Comphy's marks and Defendant's marks are similar in both language and appearance. Infringement of either one of Comphy's registered trademarks (the "C" or the COMPHY word itself) may suffice to support default judgment for Comphy. The record is clear that the COMPHY mark is very similar to the name under which Defendant does business. The two words are identical in sound and meaning with only a slight difference in spelling. The record also indicates that Comphy's "C" mark is somewhat similar to the stylized C that Defendant uses. (SAC Exs. 2, 7.) The USPTO's refusal to to register Defendant's mark because of its similarity to Comphy's reinforces the similarity. (SAC ¶ 23; Ezra Decl. ¶¶ 14–15.) Second, Comphy and Defendant sell the same category of goods (sheets and other bedding), and the identical nature of their products compounds confusion in the marketplace. (SAC ¶¶ 19, 23–25.) Third, both parties rely on the Web as their primary marketing and sales channel. (SAC ¶¶ 11–12, Ex. 7.)

Thus, under *Sleekcraft*, the allegations in the SAC, taken as true, along with the evidence submitted with the Motion, strongly suggest a likelihood of confusion. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1055–57 (9th Cir. 1999) (finding likelihood of confusion where marks were similar in appearance, sound, and meaning; defendant offered similar products and services; and both parties used the Web as a marketing device).

Additionally, Comphy alleges that Defendant optimized its online marketing strategy to direct search engine queries for Comphy Sheets to Defendant's own webpages. (SAC ¶¶ 24–25.) This constitutes "proof of intent to cause confusion" which "is entitled to great weight" in analyzing likelihood of confusion *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1052 n.11 (9th Cir. 1998).

Lastly, while actual confusion is not necessary to find a likelihood of confusion, "a showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion." *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004). Here, Comphy has received more than 100 complaints from customers seeking to return Comfy sheets they had purchased due to their inferior quality. (SAC ¶ 28; Richardson Decl. ¶ 20.) Taken together, Defendant's intent, the actual confusion engendered, and the remaining considerations under *Sleekcraft* provide ample support for the conclusion that Defendant's marks create a likelihood of confusion. *See La Quinta Worldwide, LLC v. Q.R.T.M, S.A. de C.V.*, No. CV 09-175-TUC-RCC, 2011 WL 13233546, at *4 (D. Ariz. Feb. 16, 2011) ("Evidence of actual confusion is very persuasive but hard to come by.").

Accordingly, the Court concludes that Comphy has adequately pleaded and is likely to succeed on its claims for federal trademark infringement, common law trademark infringement, and false designation of origin.[6]

### b. Cyberpiracy

Congress passed the Anti-Cybersquatting Consumer Protection Act ("ACPA") as an amendment to the Lanham Act. "The statute is designed to reach activities that

---

[6] Comphy also asserts claims for common law and statutory unfair competition. (SAC ¶¶ 53–64.) These claims are based on the same trademark infringement and the same harm, and through these two causes of action Comphy seeks the same remedies it seeks by way of its other claims. Therefore, determination of the merits of these two claims would have no effect on the outcome of this Motion and the Judgment to be awarded. Accordingly, the Court need not and does not determine whether the unfair competition claims have been properly pled or proven.

might otherwise fall outside the scope of the Lanham Act, i.e., the bad faith registration of domain names with intent to profit from the goodwill associated with the trademarks of another, or 'cybersquatting.'" *Nestle USA, Inc. v. Gunther Grant, Inc.*, No. CV-13-6754 MMM (ASX), 2014 WL 12558008, at *10 (C.D. Cal. May 13, 2014). Cybersquatters include those who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site," or who "target distinctive marks to defraud customers, including to engage in counterfeiting activities." S. Rep. No. 106-140 at 7 (1999).

To prevail on a cyberpiracy claim under § 1125(d), a plaintiff must prove that the defendant "has a bad faith intent to profit from [a] mark" and "registers, traffics in, or uses a domain name that . . . [,] in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A)(i)–(ii). In determining the merits of Comphy's cyberpiracy claim, the two salient issues are: (1) whether Defendant's mark is confusingly similar to Comphy's marks, and (2) whether Defendant had a bad faith intent.

### i. Confusingly similar

In determining whether there is confusing similarity under the ACPA, courts compare the plaintiff's mark with the website's name. *Nestle*, 2014 WL 12558008, at *10 (citing *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 784 (8th Cir. 2004)). Here, Comphy alleges Defendant registered and used the domain name "comfysheets.com" and that this domain name is confusingly similar to Comphy's distinctive marks and own domain name. As discussed, the two words are very similar in that they are identical in sound and meaning, with only a slight difference in spelling. The two "C" marks are also somewhat similar. The confusion is compounded by the fact that the products Defendant sells are exactly the same as those Comphy sells and is further confirmed by the fact that the USPTO previously denied Defendant's trademark application. (*See* SAC ¶ 23.)

11

### *ii. Bad Faith Intent*

The next consideration is whether Comphy has adequately shown that Defendant had a bad faith intent in using its mark. Bad faith intent may be shown by considering the nine statutory factors set forth in 15 U.S.C. § 1125(d)(1)(B).

Factors one and two concern the putative infringer's rights in the domain name based on either that infringer's own trademark or their legal or commonly used name. On one hand, Defendant has not appeared and therefore has not demonstrated that it owns any trademark or intellectual property rights in the phrase "Comfy Sheets." On the other hand, the words "Comfy Sheets" are a fair descriptor of the product Defendant is selling, and this observation would strengthen Defendant's claim to a right to sell its sheets under this designation. Overall, these two factors weigh slightly against a finding of bad faith. 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(II).

Factor three is "the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services." 15 U.S.C. § 1125(d)(1)(B)(i)(III). The House Report legislative history of § 1125 notes that "[a] defendant should have the burden of introducing evidence of lawful use to assist the court in evaluating this factor." House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 11 (Oct. 25, 1999). The only relevant evidence before the Court is the fact that Defendant first used the "Comfy Sheets" designation in 2017, well after Comphy had established rights in its marks in 2008. (*See* SAC Exs. 5, 6.) Defendant has chosen not to participate in these proceedings and demonstrate otherwise. Therefore, this factor weighs in favor of finding bad faith.

Factor four is "the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name." 15 U.S.C. § 1125(d)(1)(B)(i)(IV). Here, Defendant's use of the mark is not noncommercial, nor is there any indication of fair use, and this factor therefore does not assist Defendant.

Factor five is the putative infringer's "intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm

the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." 15 U.S.C. § 1125(d)(1)(B)(i)(V). Factor five is a concise description of the case at hand. Comphy alleges that Defendant included "Comphy" and similar words as search terms in its search engine optimization efforts such that Defendant's products would appear in the search results when prospective consumers searched for Comphy's products. (SAC ¶ 24.) Therefore, this factor weighs strongly in favor of finding bad faith.

Factors six through nine raise considerations not applicable here and are therefore neutral. Nevertheless, on the balance, the applicable factors provide sufficient support for a finding of bad faith intent. Comhpy has adequately pled and proven bad faith intent for the purpose of this Motion.

Accordingly, the Court concludes that Comphy has adequately pleaded and is likely to succeed on the merits of its cyberpiracy claim.

### 3. The Sum of Money at Stake

The fourth *Eitel* factor directs courts to balance the amount of money at stake with the "seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471. The amount at stake must be proportionate to the harm alleged. *Landstar*, 725 F. Supp. 2d at 921. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's action." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Here, Comphy seeks injunctive relief, the maximum $100,000 in statutory damages for cyberpiracy; $475,414 in compensatory damages for lost profits and damage to its reputation and goodwill, and $15,108.28 in attorneys' fees and costs, totaling $590,522.28.

The compensatory damages Comphy seeks are supported by the the declaration of Mia Richardson, President of Comphy Co., Inc., as well as the declaration of

Jeffrey S. Edwards, a paralegal who researched Defendant's Amazon sales volume. (*See* Richardson Decl.; Decl. Jeffrey S. Edwards ("Edwards Decl."), ECF No. 55-4.) Provided that the compensatory damages are properly supported, these damages will by their definition be proportional to the harm Defendant caused. The potential statutory damages for cyberpiracy are high, but it is the Court's responsibility to fix the statutory damages at a rate appropriate for the facts of the case. Subejct to these caveats, this factor weighs in favor of entry of default judgment.

### 4. *The Possibility of a Dispute Concerning Material Facts*

The fifth *Eitel* factor directs courts to consider the possibility that material facts are in dispute. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, the undisputed material facts are that Comphy owns two valid trademarks for its brand, that Defendant is using a similar stylized trademark to sell competing goods, and that actual confusion exists because consumers have tried to return their Comfy goods to Comphy. And although disputes might conceivably exist as to similarity and confusion, Defendant's failure to appear in this action nevertheless supports a finding that "no factual disputes exist that would preclude the entry of default judgment." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014). Accordingly, this factor favors entry of default judgment.

### 5. *Whether the Defendant's Default was Due to Excusable Neglect*

The sixth *Eitel* factor directs courts to consider whether the defendant's default is the result of excusable neglect. *PepsiCo,* 238 F. Supp. 2d at 1177. Here, upon an order from this Court granting leave to serve the summons and SAC by alternative means, Comphy served Defendant's patent attorney, Randy Michels, with a copy of the SAC. (Min. Order, ECF No. 42; Proof of Service, ECF No. 47.) Comphy simultaneously provided Michels with a copy of the Request for Entry of Default and a copy of the Motion for Default Judgment. (Proof of Service; Appl. Enter Default, ECF No. 50; Ezra Decl. ¶ 7.) Moreover, Defendant is actively participating in proceedings before the USPTO in which Comphy is an adverse party. (SAC Ex. 6;

OSC Resp. 2.) Given that Defendant was on notice, its lack of participation appears to result more from its choice not to appear than from excusable neglect. Accordingly, this factor favors entry of default judgment.

### 6. *The Strong Policy Favoring Decisions on the Merits*

Finally, "default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, when the defendant fails to defend an action, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. On one hand, this factor would support denying or deferring entry of default judgment until the USPTO has made its determination on Defendant's most recent application. On the other hand, it is Defendant who has failed to appear in federal court or otherwise respond, making a determination on the merits by this Court impossible. Accordingly, this factor does not preclude default judgment.

## D. Remedies

To summarize, Comphy has shown entitlement to relief on its trademark infringement and cyberpiracy claims. For the following reasons, the Court finds it appropriate to issue a trademark injunction and award money damages based on disgorgement of Defendant's profits.

### 1. *Injunction*

"[T]he district court [has] the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116(a)). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Having concluded that Comphy has established a likelihood of success on the merits of its trademark and unfair competition claims, injunctive relief

is appropriate here to prevent irreparable injury to Comphy's interests. The Court will issue a judgment containing an injunction consistent with this Order.

### 2. Damages for Trademark Infringement

Federal law provides that, subject to the principles of equity, a trademark owner may "recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Additionally, "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." *Id*. The court may exercise its discretion in this matter. *Id*.

With respect to Defendant's profits and the disgorgement thereof, Comphy is required to prove only Defendant's sales of products using Comphy's marks; had Defendant appeared to defend, it would have carried the burden of showing deductions. 15 U.S.C. § 1117(a). By declaration, Comphy presents a detailed list of Defendant's Amazon sales as determined by the third party application AMZ Scout, which tracks Amazon product sales history by seller. (Edwards Decl. Ex. A.) The AMZ Scout data provides a breakdown of sales by product, showing an estimated $523,841.53[7] in revenue under the product name "Comfy Sheets" since May 2017. (*Id*. ¶ 4.) Given that Defendant has not appeared and presented any deductions, the Court concludes that Comphy has established $523,841.53 as an appropriate measure of Defendant's profits. Because the defendant's profits are an appropriate measure of damages under the Lanham Act, Comphy has shown entitlement to this amount in damages. However, in its Motion, Comphy indicates that it seeks only $475,414 in

---

[7] This is slightly less than the amount Comphy asserts was Defendant's revenue. The Court finds that only the bottom five lines of the AMZ Scout data provide sufficient evidence of an infringing sale. Moreover, the AMZ Scout data indicates that the seller's "net margin" on each of these sales was between 70% and 78%. Although the burden is on the defendant to present deductions, the Court should not close its eyes to evidence clearly showing that a portion of sales was not in fact profit. Taking into account the margins, the Court calculates Comfy's profits to be at most $523,841.53. This point is moot, however, given that Comphy requests still less than this amount.

compensatory damages. Therefore, the Court will award Comphy $475,414 in compensatory damages.

The Court does not determine whether Comphy also satisfactorily proved lost profits. Even if proven here, the Court would not award lost profits as additional relief beyond the $475,414 that the Court is awarding as disgorgement. The Court is satisfied that this amount is sufficient to compensate Comphy for infringement of its rights while also heeding the Lanham Act's instruction to award damages as "compensation and not a penalty." 15 U.S.C. § 1117(a); *see Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (cautioning that "recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act"). In any case, this is the amount Comphy requests. Accordingly, the Court awards Comphy $475,414.00 as damages for trademark infringement pursuant to the Lanham Act. *Id*.

### 3. Damages for Cyberpiracy

The Lanham Act provides for statutory damages for cyberpiracy violations under 15 U.S.C. § 1125(d)(1) in an amount of $1,000 to $100,000 per domain name. 15 U.S.C. § 1117(d). "A prevailing plaintiff may recover statutory damages under this provision in addition to actual damages for infringement of its trademark." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1085 (C.D. Cal. 2012) (citing *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1206 (11th Cir. 2009) ("We agree and conclude that [a cyberpiracy] statutory damages award, which serves as a sanction to deter wrongful conduct, is not duplicative of a service mark infringement actual damages award, which serves to compensate a plaintiff for his injuries.")).

To determine a reasonable amount of statutory damages, "courts generally consider a number of factors . . . including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, the defendant's status as a 'serial' cybersquatter . . . and other

behavior by the defendant evidencing an attitude of contempt towards the court of the proceedings." *Verizon Cal., Inc. v. OnlineNIC, Inc.*, No. C 08–2832 JF (RS), 2009 WL 2706393, at *3 (N.D. Cal. Aug. 25, 2009).

Here, Comphy has shown that Defendant appropriated Comphy's mark and name and purposefully directed web traffic away from Comphy to its own websites. Additionally, Defendant provided false contact information on its website and Amazon pages, providing an Austin, Texas company address that does not exist and a phone number that reroutes to another bedding competitor. Moreover, Defendant's decision not to appear in this action while simultaneously participating in the USPTO proceedings with Comphy demonstrates its willfulness. Therefore, the Court concludes that $50,000.00 is an appropriate statutory penalty for Defendant's cyberpiracy. *See Wecosign*, 845 F. Supp. 2d at 1076 (awarding $50,000 in statutory damages for cyberpiracy under similar facts, where plaintiff asserted lost profits of $204,000).

*4. Attorneys' Fees*

"An award of reasonable attorneys' fees and costs is expressly provided for in 'exceptional cases' of trademark infringement." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (citing 15 U.S.C. § 1117(a)). Attorneys' fees are available on both trademark infringement claims and cyberpiracy claims. 15 U.S.C. § 1117(a). "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Poof Apparel*, 528 F.3d at 702. In the context of a default judgment, the Ninth Circuit has upheld awards of attorneys' fees solely because, "by entry of default judgment, the district court determined," as the plaintiff alleged, that the defendant infringed "knowingly, maliciously, and oppressively, and with an intent to injure" the plaintiff. *Id.* (cleaned up); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002); *see also Discovery Comm'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1292

(C.D. Cal. 2001) ("[A] case may be considered exceptional where the defendants disregard the proceedings and do not appear.")

This reasoning applies here and supports an award of attorneys' fees. Comphy alleged not only that Defendant's acts were "willful and deliberate," (SAC ¶ 33, 52); it also alleged specific conduct on Defendant's part indicating willful and deliberate action meant to divert business way from Comphy, (SAC ¶ 24). Accordingly, the Court concludes that Plaintiff is entitled to attorneys' fees calculated pursuant to Local Rule 55-3 based on $525,414 in compensatory damages, as follows: $5,600 + (2% of $425,414) = $14,108.28.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Comphy's Motion for Default Judgment. (ECF Nos. 55, 58.) The Court will issue Judgment against Defendant Pratik Jain in the amount of $475,414 + $50,000 + $14,108.28 = **$539,522.28** along with appropriate injunctive relief.

**IT IS SO ORDERED.**

November 1, 2021

_____
 **OTIS D. WRIGHT, II
 UNITED STATES DISTRICT JUDGE**